%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Joseph T. Hayes, M.D.

**DEFENDANTS**
American International Group, The United States Life Insurance Company in the City of New York and Disability Reinsurance Management Services, Inc.

**(b)** County of Residence of First Listed Plaintiff   **BUCKS COUNTY, PA**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   NEW YORK COUNTY, NY
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Mark F. Seltzer, Esquire./MARK F. SELTZER & ASSOCIATES
1515 Market Street, Suite 1100, Philadelphia, PA 19102
#215-735-4222

Attorneys (If Known)

See Attached List

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- X 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)  and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | X 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| X 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- X 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
DIVERSITY UNDER 28 U.S.C. 1332

Brief description of cause:
DISABILITY INSURANCE CLAIM

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ in excess of $150,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  X Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):  JUDGE _____  DOCKET NUMBER _____

DATE  6-26-09

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**COUNSEL LIST**

**Attorney for Plaintiff:**
Mark F. Seltzer, Esquire
MARK F. SELTZER & ASSOCIATES
1515 Market Street
Suite 1100
Philadelphia, PA 19102
#215-735-4222
fax #215-735-4225
email:  markfseltzer@seltzerlegal.com


**Attorney for Defendant- Disability Reinsurance Management Services, Inc.**
Randi F. Knepper, Esquire
McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Three Gateway Center
100 Mulberry Street
Newark, NJ 07102
rknepper@mdmc-law.com
#973-622-7711
#973-565-2033 (direct)
fax #973-622-5314

**Attorney for Defendant- American International Co**
Robert P. Lesko, Esquire
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
33 Washington Street
Newark, NJ 07102-33017
#973-624–0800
fax #973-624-0808

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**    **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**        Example:        U.S. Civil Statute: 47 USC 553
                                                          Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

APPENDIX I

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

JOSEPH T. HAYES, M.D.                    : CIVIL ACTION
                                         :
                    v.                   :
AMERICAN INTERNATIONAL GROUP             :
                         ET AL.          : NO.:

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.         ( X )

| 6-26-09 | Mark F. Seltzer, Esquire | PLAINTIFF |
|---|---|---|
| **Date** | **Attorney-at-Law** | **Attorney for** |
| #215-735-4222 | #215-735-4225 | markfseltzer@seltzterlegal.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff:___(Joseph T. Hayes, M.D.)  1452 Brownsville Road, Trevose, Pennsylvania 19053___

Address of Defendants:___(American International Group) 70 Pine Street, New York, NY 10270, (Disability Reinsurance Managment Services, Inc.) One Riverfront Plaza, Westbrook, ME 04092-9700 (The United States Life Insurance Company in the City of NewYork) 830 Third Avenue, New York, NY 10022 and 2727 A. Allen Parkway, Houston, TX 77019-2191 and 3600 Route 66 #2E, Neptune, NJ 07753-2605

Place of Accident, Incident or Transaction:___3600 Route 66, Neptune, New Jersey 07753___
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)
Yes☐   No X

Does this case involve multi-district litigation possibilities?                    Yes ☐   No X
RELATED CASE, IF ANY
                    N/A
Case Number: _____Judge_____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                              Yes☐   No X
2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated
    action in this court?                                    Yes☐   No X

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously
    terminated action in this court?                         Yes☐   No X

4.  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?                                           Yes☐   No X

CIVIL: (Place ✔ in ONE CATEGORY ONLY)
A.  Federal Question Cases:                          B.  Diversity Jurisdiction Cases:
1.  ☐ Indemnity Contract, Marine Contract, and All Other Contracts   1.  X  Insurance Contract and Other Contracts
2.  ☐ FELA                                          2.  ☐ Airplane Personal Injury
3.  ☐ Jones Act-Personal Injury                     3.  ☐ Assault, Defamation
4.  ☐ Antitrust                                     4.  ☐ Marine Personal Injury
5.  ☐ Patent                                        5.  ☐ Motor Vehicle Personal Injury
6.  ☐ Labor-Management Relations                    6.  ☐ Other Personal Injury (Please specify)
7.  ☐ Civil Rights                                  7.  ☐ Products Liability

8. ☐ Habeas Corpus                    8. ☐ Products Liability — Asbestos
9. ☐ Securities Act(s) Cases          9. ☐ All other Diversity Cases
10. ☐ Social Security Review Cases        (Please specify)
11. ☐ All other Federal Question Cases
    (Please specify)

# ARBITRATION CERTIFICATION
(Check appropriate Category)

I, MARK F. SELTZER, counsel of record do hereby certify:

 X Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

 X Relief other than monetary damages is sought.

DATE: _____6.26.09_____  _____    23084
          Mark F. Seltzer, Esquire    Attorney I.D. #
          *Attorney for Plaintiff*


**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

**I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court
except as noted above.**

DATE: ____6-26-09_____  _____    23084
          Mark F. Seltzer, Esquire    Attorney I.D.#
CIV. 609 (6/08)        *Attorney for Plaintiff*

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff:___(Joseph T. Hayes, M.D.) 1452 Brownsville Road, Trevose, Pennsylvania 19053___

Address of Defendants: (American International Group) 70 Pine Street, New York, NY 10270, (Disability Reinsurance Managment Services, Inc.) One Riverfront Plaza, Westbrook, ME 04092-9700 (The United States Life Insurance Company in the City of NewYork) 830 Third Avenue, New York, NY 10022 and 2727 A. Allen Parkway, Houston, TX 77019-2191 and 3600 Route 66 #2E, Neptune, NJ 07753-2605

Place of Accident, Incident or Transaction: _3600 Route 66, Neptune, New Jersey 07753_
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)
                              Yes☐    No X

Does this case involve multi-district litigation possibilities?                Yes ☐    No X
RELATED CASE, IF ANY
                              N/A
Case Number: _____Judge_____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                              Yes☐    No X
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated
    action in this court?                          Yes☐    No X

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously
    terminated action in this court?               Yes☐    No X

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
                              Yes☐    No X

CIVIL: (Place ✔ in ONE CATEGORY ONLY)
A.  Federal Question Cases:                        B.  Diversity Jurisdiction Cases:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts   1. X Insurance Contract and Other Contracts
2. ☐ FELA                                          2. ☐ Airplane Personal Injury
3. ☐ Jones Act-Personal Injury                     3. ☐ Assault, Defamation
4. ☐ Antitrust                                     4. ☐ Marine Personal Injury
5. ☐ Patent                                        5. ☐ Motor Vehicle Personal Injury
6. ☐ Labor-Management Relations                    6. ☐ Other Personal Injury (Please specify)
7. ☐ Civil Rights                                  7. ☐ Products Liability

8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

# ARBITRATION CERTIFICATION
(Check appropriate Category)

I, MARK F. SELTZER, counsel of record do hereby certify:

   X  Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

   X  Relief other than monetary damages is sought.

DATE: _____6-26-09_____     _____     23084
                                      Mark F. Seltzer, Esquire       Attorney I.D. #
                                        *Attorney for Plaintiff*

**NOTE:**  A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

**I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.**

DATE: _____6-26-09_____     _____     23084
                                         Mark F. Seltzer, Esquire       Attorney I.D.#
CIV. 609 (6/08)                 *Attorney for Plaintiff*

**MARK F. SELTZER & ASSOCIATES, P.C.**
BY:    MARK F. SELTZER, ESQUIRE
       1515 Market Street
       Suite 1100
       Philadelphia, PA 19102              Attorney for Plaintiff
       (215) 735-4222

---

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH T. HAYES, M.D. | : | CIVIL ACTION |
| 1452 Brownsville Road | : | |
| Trevose, PA 19053 | : | |
| | : | DEMAND FOR JURY TRIAL |
| v. | : | |
| | : | |
| AMERICAN INTERNATIONAL GROUP | : | |
| 70 Pine  Street | : | NO. |
| New York, NY 10270 | : | |
| and | : | |
| THE UNITED STATES LIFE | : | |
| INSURANCE COMPANY IN THE | : | |
| CITY OF NEW YORK | : | |
| 830 Third Avenue | : | |
| New York, NY 10022 | : | |
| and | : | |
| DISABILITY REINSURANCE | : | |
| MANAGEMENT SERVICES, INC. | : | |
| One Riverfront Plaza | : | |
| Westbrook, ME 04092-9700 | : | |

## COMPLAINT

### I.  Jurisdictional Statement

1.      Jurisdiction is based upon diversity of citizenship, 28 U.S.C. §1332 and that the

matter in controversy exclusive of interest, attorneys fees and costs, exceeds the

sum of $75,000.00. · Plaintiff's claims are not preempted by the Employee

Retirement Income Security Act of 1974, as Amended (hereinafter "ERISA"), 29

U.S.C. § 1001 et seq.

2.     The matter in controversy exceeds the arbitration limit of $150,000.00.

3.     Plaintiff's claims relate to the United States Life Insurance Company, American Medical Association (hereinafter "AMA") Sponsored Long Term Disability Income Plan, Certificate Number 60134630, AMA Group Policy G-189,553 (hereinafter "Policy").

## II.  The Parties

4.     Plaintiff, Joseph T. Hayes, M.D. (hereinafter "Dr. Hayes") is an adult individual who is a citizen of the Commonwealth of Pennsylvania residing in Bucks County, Pennsylvania at 1452 Brownsville Road, Trevose, PA 19053.

5.     At all times relevant herein, and for a significant period of time prior thereto, Dr. Hayes engaged in the practice of Occupational Medicine, employed by Montgomery Hospital, and licensed to practice medicine in the Commonwealth of Pennsylvania and the State of Kentucky, Board Certified in Occupational Medicine.

6.     Defendant, American International Group (hereinafter "AIG"), is a New York company licensed to do business in the Commonwealth of Pennsylvania, and is a citizen of and domiciled in the State of New York with its principal place of business at 70 Pine Street, New York, NY 10270.

7.     At all times relevant and material hereto, AIG regularly conducted business in the Commonwealth of Pennsylvania.

8.     Defendant, United States Life Insurance Company in the City of New York (hereinafter "US Life"), a subsidiary and/or division of AIG, is a New York company licensed to do business in the Commonwealth of Pennsylvania, and is a citizen of and domiciled in the State of New York with its principal place of business at 830 Third Avenue, New York, NY 10022.

9.      At all times relevant and material hereto, US Life regularly conducted business in the Commonwealth of Pennsylvania and is a subsidiary of AIG.

10.     Defendant, Disability Reinsurance Management Services, Inc. (hereinafter "DRMS"), is a Maine company licensed to do business in the Commonwealth of Pennsylvania, and is a citizen of and domiciled in the State of Maine with its principal place of business at One Riverfront Plaza, Westbrook, ME 04092-9700.

11.     At all times relevant and material hereto, DRMS was contracted by AIG to act as claims administrator.

12.     At all times relevant and material hereto, AIG assigned the responsibility for conducting investigations into Dr. Hayes' claim for benefits and determinations on Dr. Hayes' benefits claims to DRMS, which thereupon became AIG's agent for that purpose.

13.     At all times relevant and material hereto, AIG acted or appeared to be acting by and through its agent, servants, employees, representatives and/or independent contractors, who were engaged in its business and within the course and scope of their employment and/or in furtherance of the business of AIG.

14.     At all times relevant and material hereto, Defendant, US Life is the subsidiary of AIG and in that capacity, its employees acted or appeared to be acting as the agent, representative, contractor, affiliate, subsidiary or other business interest on behalf of Defendant, AIG, engaged in this business and within the scope and course of its employment and authority.

15.     Alternatively, at all times relevant and material hereto, Defendant, DRMS, and its employees, acted as the agent, representative, contractor, affiliate, subsidiary or other business entity on behalf of Defendant AIG and/or US Life while engaged in

3

this business and within the course and scope of its employment and authority.

16.   Alternatively, Defendants AIG and US Life (hereinafter collectively referred to as AIG) were acting as independent insurance entities in conjunction with one another.

### III.  The Policy

17.   On or before March 3, 1995, Plaintiff, Dr. Hayes, purchased disability income insurance from US Life which was sponsored by the American Medical Association pursuant to certificate number 60134630 and policy number G-189,533 which provided a monthly benefit for total disability benefits and/or residual disability benefits of $4,000.00, with a benefit period until February 13, 2023 (Dr. Hayes' 70th birthday) or for life if Dr. Hayes is totally disabled before February 13, 2003. A copy of the policy is attached hereto as Exhibit "A".

18.   The policy provides for a commencement date (date when benefits begin) of 91 days after the date of disability from sickness or injury;  and an elimination period for residual disability of zero days. A copy of the policy is attached hereto as Exhibit "A".

19.   Since March 3, 1995, Dr. Hayes has continually paid premiums to AIG and/or US Life to initiate and/or renew the policy of insurance as described above to provide disability insurance in the event he became totally and/or residually disabled under the contract.

20.   In the policy, the term "Total Disability" is defined as...

> Inability to perform the substantial and material duties of your current occupation by the end of the elimination period.  To be considered totally disabled you must be under the regular care of a physician.

See Exhibit "A" p.4.

21.   In the policy, the term "Residual Disability" means that due to injury or sickness...

1.  You are not able to do one or more of the substantial and material daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them, after you go back to work following a period of consecutive days of Total Disability equal to the elimination period;

2.  Your inability to perform duties as in 1) above is due to the same condition that caused the Total Disability;

3.  You have a loss of Monthly Income of at least 20%; and

4.  You are under the regular care of a Physician. United States Life may waive this requirement if continued care is of no benefit.

See Exhibit "A" p.4.

22. In the policy, US Life promises that if [Dr. Hayes] becomes "Totally Disabled while insured under the group policy and continues to be so Disabled past the Elimination Period, US Life will pay to [Dr. Hayes] the benefits described below" Exhibits "A" p.4.

23. The policy defines "Current Occupation" as ...

The duties of the medical speciality then being practiced or of the occupation being performed immediately prior to the disability.

See Exhibit "A" p.4.

24. The policy further promises that:

Benefits will start:

•  at the end of the elimination period.

Benefits will end when the first of the following events occurs:

•  you fail to give required proof of continuing Total or Residual Disability;

•  your Total or Residual Disability ends;

•  the maximum benefit period ends; or

•  you die.

See Exhibit "A" p.5.

## IV.  The Disability Claim

25.  Prior to November 2001, Dr. Hayes had been a practicing physician specializing in Occupation Medicine (hereinafter "Medical Speciality") with a full time practice, and whose duties and responsibilities include, but are not limited to, the evaluation, diagnosis, or treatment of occupational injuries and diseases; ordering of laboratory tests, and other diagnostic procedures; acupuncture; prescribing medication and treatment; referral of patients; and consultation with other physicians.

26.  Prior to November 2001, Dr. Hayes was employed by Montgomery Hospital to provide occupational medicine services.

27.  Dr. Hayes' pre-disability occupational duty of acupuncture was a non-essential and non-material to his speciality of occupational medicine and  constituted approximately 5% of his practice.

28.  The physical demands of Dr. Hayes' Medical Specialty required extensive standing, bending, squatting, neck flexion and reaching and fine manual dexterity for suturing, bandaging and splinting injuries.

29.  In contrast to the physical requirements associated with performing the material and substantial duties of an occupational medicine physician, performing acupuncture part-time does not encompass each of these requirements.

30.  On or about November 6, 2001, Dr. Hayes was struck in the left frontal region by a door at Montgomery Hospital which caused extension and rotational injuries to his neck and low back.

31.  On November 27, 2001, an MRI was performed on Dr. Hayes' cervical and lumbar spine which showed degenerative changes of the  spine with stenosis and central

6

herniation at C2-3, disc bulges, lumbar scoliosis, degenerative disc disease and mild foraminal stenosis.

32. On January 15, 2002, Dr. Hayes was examined by Orthopedic Surgeon, Steven J. Valentino, D.O., who diagnosed Dr. Hayes with radiating neck and low back pain with cervical and lumbar facet strain, cervical radiculitis and aggravation of underlying degenerative changes of the cervical and lumbar spine.

33. During the examination, Dr. Valentino found that Dr. Hayes suffered from severely restricted cervical range of motion with spasm, severe facet synovitis and effusion, neck pain radiating into the left arm, restricted lumbosacral flexibility, straight leg raises remarkable for low back pain, numbness about the left index and long fingers and thumb, as well as 4+/5 weakness of the left biceps, triceps and shoulder abductors.

34. After the examination, Dr. Valentino restricted Dr. Hayes from returning to his pre-injury occupation due to his disabling cervical and lumbar conditions.

35. On January 23, 2002, an EMG study was conducted which showed left median nerve entrapment at the wrist, left upper trunk brachial plexopathy, multi-level cervical degenerative disc disease with central foraminal stenosis.

36. On January 28, 2002, radiographs with flexion and extension views were taken of Dr. Hayes' cervical and lumbar spine which showed degenerative changes and limited range of motion.

37. On February 12, 2002, Dr. Hayes was examined by Dr. Valentino, who diagnosed Dr. Hayes with herniated cervical disc with exacerbation of degenerative disc disease, cervical and lumbar facet strain, left C6 radiculopathy with brachial

plexopathy and asymptomatic carpal tunnel syndrome left.

38.     After the examination, Dr. Valentino restricted Dr. Hayes from returning to his pre-injury occupation or any occupation due to his disabling cervical and lumbar conditions.

39.     On January 26, 2003 an MRI was conducted of Dr. Hayes' cervical spine which showed C2-3 diffuse central osteophytic ridge, moderate left and mild right neural foraminal stenosis; C3-4 prominent central osteophytic ridge and central disc herniations, deformity of the ventral cord, moderate spinal stenosis, severe bilateral neural foraminal stenosis; C4-5 diffuse disc bulge, bilateral uncovertebral joint hypertrophy, flattening of the ventral cord and mild to moderate stenosis, severe bilateral ; C5-6 diffuse osteophytic ridge, flattening of the ventral cord, mild to moderate spinal stenosis, right greater than left uncovertebral joint hypertrophy; C6-7 central osteophytic ridge, mild spinal stenosis, moderate to severe bilateral foraminal stenosis; C7-T1 diffuse disc bulge, moderate to severe bilateral neural foraminal stenosis.

40.     On May 11, 2005, an MRI was conducted of Dr. Hayes' lumbar spine which showed severe compression of the right L4 nerve root within the foramen secondary to severe herniations of the disc material into the foramen itself; L3-4 disc material protrudes into the neural foramina bilaterally creating moderate foraminal stenosis bilaterally; L2-3 minimal disc bulge, neural foramina are mildly narrowed; L1-2 minimal disc bulge with dorsal annular tear.

41.     On May 16, 2005, an EMG study was conducted which showed findings consistent with moderate L5 lumbar radiculopathy.

8

## V.  The Disability Claim - Initial Claim for Benefits

42.     On or before February 21, 2002, Dr. Hayes notified AIG and/or DRMS that he was disabled under the policy due to spinal injuries suffered on November 6, 2001.

43.     On February 21, 2002, DRMS notified Dr. Hayes of its desire to have him submit copies of his medical, occupational and financial information from the time he was first treated for his spinal injuries up to the current date.  DRMS further requested that Dr. Hayes complete and submit a Physician Questionnaire to clarify his occupational duties as a occupational medicine physician. A copy of the February 21, 2002 correspondence from DRMS to Dr. Hayes is attached hereto as Exhibit "B".

44.     On or about February 26, 2002, Dr. Hayes completed a "Physician Questionnaire" form which was required by DRMS as part of Dr. Hayes' claim evaluation.  On that form, Dr. Hayes represented to DRMS that he worked an average 40 hours per week in his Medical Specialty. A copy of the Physician Questionnaire is attached hereto as Exhibit "C".

45.     In response to Question 10 of the Physician Questionnaire, Dr. Hayes indicated that he performed acupuncture for approximately 3 hours, 1 day per week which was consistent with the level of pre-disability acupuncture activities.  Notwithstanding Dr. Hayes' ability to perform certain peripheral or non-essential duties of his practice, DRMS and/or AIG approved Dr. Hayes' claim for Total Disability based upon the weight of the medical and occupational information documenting his inability to perform the material and substantial duties of his Medical Specialty, Occupational Medicine.  See Exhibit "C" p.2.

46.   On March 14, 2002, DRMS medical consultant, Lisa Stiffler, R.N., completed her review of the medical information and concluded that the medical evidence supported Dr. Hayes' restrictions and limitations. Nurse Stiffler opined that Dr. Hayes may have difficulty with prolonged activities. Although Nurse Stiffler recommended that DRMS perform a "doc call" in three months, DRMS' claims personnel apparently believed that Dr. Hayes met the definition of Total Disability and was unlikely to improve and therefore waited more than three years to perform a second medical review.

47.   On March 14, 2002, DRMS sent Dr. Hayes a letter indicating that Dr. Hayes had been approved for total disability benefits based upon his inability to perform the material and substantial duties of his current occupation. A copy of the March 14, 2002 correspondence from DRMS to Dr. Hayes is attached hereto as Exhibit "D".

48.   On or about November 6, 2003, Dr. Hayes advised DRMS Benefit Specialist Sally Hauber that he expected to perform medical file reviews within three to four months. Dr. Hayes also advised Ms. Hauber that he was able to drive from his home in New Jersey to his office in Pennsylvania, but found it difficult and that he had interviewed for part-time positions in other occupations. DRMS continued to pay total disability benefits to Dr. Hayes in accordance with his policy's provisions because he was unable to perform the material and substantial duties of his Medical Specialty, notwithstanding his ability to engage in other types of daily activities, such as driving to Pennsylvania.

49.   On November 18, 2005, after more than three years, DRMS referred Dr. Hayes' claim file to one of its nurse consultants, Kimberly Murray, RN for a medical review. Nurse Murray completed her review on or about December 7, 2005, and concluded

that Dr. Hayes' MRI dated May 11, 2005, "showed severe compression of right L4 nerve root within the foramen secondary to severe herniation of disc material into the foramen itself." Nurse Murray concluded that Dr. Hayes' restrictions and limitations were reasonable and not likely to change.

50.  In or about January 2006, DRMS delayed sending Dr. Hayes his monthly benefit payments. On or about January 16, 2006, Sally Hauber told Dr. Hayes that she had received numerous complaints of delays from other claimants.

51.  During the telephone conversation on January 16, 2006, Ms. Hauber questioned Dr. Hayes about returning to work, and Dr. Hayes denied having returned to work in his Medical Specialty. Subsequently, Ms. Hauber documented her conversation with Dr. Hayes and stated, "I did let him know that I have received the medical and had it reviewed. His condition seems to be supported by the medical."

52.  On or about January 19, 2006, DRMS knowingly and willfully engaged in a deceptive claims handling practice when it requested one of its investigative agents, Kas-Per, to engage in a "Confidential Search" and secure financial information concerning Dr. Hayes' earnings from the Social Security Administration without the appropriate authorization and/or consent from Dr. Hayes.

53.  On or about January 19, 2006, DRMS' claims handler Sally Hauber authorized Kas-Per to secure privileged and confidential financial information without proper consent. Moreover, DRMS's Sally Hauber knowingly and willfully made a false representation to the Social Security Administration when she signed form SSA-7050-F4 without Dr. Hayes' knowledge, consent and/or authorization.

54.  DRMS knowingly and willfully misrepresented its authority and obtained confidential

earnings information from the Social Security Administration under false pretense.

55.   On May 18, 2006, DRMS sent Dr. Hayes a letter indicating that it was terminating benefits because Dr. Hayes' surveilled activities were "inconsistent with the restrictions and limitations provided by Dr. Valentino as well as the severity reported by you." A copy of the May 18, 2006 correspondence from DRMS to Dr. Hayes is attached hereto as Exhibit "E".

56.   In addition, the May 18, 2006 letter from DRMS stated that it "appears that your claim has a significant overpayment of approximately $183,800.00 based on our Financial Consultant's calculations.   We do reserve the right to request this overpayment." See Exhibit "E" p.4.

57.   On November 9, 2006, AIG sent a letter to Dr. Hayes indicating that the review of Dr. Hayes' claim file is complete, that the termination rendered on May 18, 2006 still stands and that the claims file had been referred to the State of New Jersey, Department of Insurance, Office of the Insurance Fraud Prosecutor (hereinafter "OIFP").   A copy of the November 9, 2006 correspondence from AIG to Dr. Hayes is attached hereto as Exhibit "F".

58.   From May 19, 2007 until May 23, 2007, Dr. Hayes received inpatient psychiatric treatment at the Carrier Clinic located in Belle Meade, New Jersey.

59.   Dr. Hayes was admitted to the Carrier Clinic due to anxiety and depression with suicidal ideation.

60.   Dr. Hayes' anxiety and depression has been exacerbated by DRMS' baseless referral of Dr. Hayes to the NJOIFP.

61.   For the period from November 21, 2001 until May 18, 2006, Dr. Hayes regularly

provided DRMS with proof of continuing total disability as required by the Policy.

62.    From on or after November 21, 2001 until the present, Dr. Hayes' treating physicians have consistently restricted Dr. Hayes from performing the material and substantial duties of his Medical Specialty.

63.    From November 21, 2001 until the present, Dr. Hayes' injury prevented him from performing the substantial and material duties of his Medical Specialty.

64.    Dr. Hayes continued to satisfy the Policy's definition of disability throughout the Elimination Period.

65.    Dr. Hayes continues to satisfy the Policy's definition of Total Disability.

## VI.  COUNT I - BREACH OF CONTRACT

66.    Paragraphs 1 through 65 above are incorporated herein by references as if fully set forth at length.

67.    In accordance with the above mentioned contractual terms, conditions, rights and obligations, Dr. Hayes made and continues to make claim for monthly disability benefits under his policies of insurance issued by US Life and is still owed benefits for the period of time he was totally and/or residually disabled.

68.    AIG assigned the responsibility for conducting investigations into Dr. Hayes' claim for benefits and determinations on Dr. Hayes' benefits claims to DRMS, which thereupon became AIG's agent for that purpose.

69.    AIG is responsible for the acts of its agent DRMS.

70.    AIG and/or DRMS breached it's contractual duty to Dr. Hayes by unreasonably failing to pay disability benefits under his policies to which he is entitled.

71.    Upon information and belief, AIG and/or DRMS improperly, unjustifiably and unconscionably terminated total and/or residual disability benefits under the policies without reasonable basis and based on faulty, flawed, insufficient and defective information.

72.    As a consequence of AIG and/or DRMS's pattern and practice of repudiation of its contractual obligations, Dr. Hayes has been deprived of his contractual rights to receive total disability benefits payable under the policies of insurance.

73.    As a further consequence of their breach of the policies of insurance, AIG has been unjustly enriched due to the substantial past, present and ongoing future detriment of its insured, Dr. Hayes, who continues to pay premiums on the policies in question.

74.    As a further consequence of AIG and/or DRMS's breach of the policies of insurance, Dr. Hayes has incurred and will continue to incur counsel fees, litigation costs and expenses, and loss of use of benefits payable and earnings thereon.

**WHEREFORE**, Plaintiff, Dr. Joseph Hayes, demands judgment in his favor and against Defendants, jointly and severally, for compensatory damages in an amount in excess of $150,000.00 Dollars, plus attorney's fees, expenses, costs and interest.

## VII.  COUNT II - UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW AND BAD FAITH

75.    Paragraphs 1 through 74 above are incorporated by reference as if fully set forth at length.

76.    Plaintiff, Dr. Hayes, purchased an individual disability policy and continues to renew and pay for the subject policy but has suffered an ascertainable loss of money as

14

a result of various fraudulent, unfair and/or deceptive acts or practices by

Defendants under the Unfair Trade Practices and Consumer Protection Law, 73

P.S. § 201-1, including but not limited to:

> (a) fraudulently misrepresenting that the policy would provide disability coverage in the event of in inability to perform the material and substantial duties of his regular occupation, when in fact, it did not;

> (b) knowingly advertising and selling the policy with fraudulent intent not to provide coverage thereon;

> (c) knowingly advertising the policy with fraudulent intent not to sell it as advertised;

> (d) knowingly advertising and selling the policy with fraudulent intent not to provide total and/or residual disability benefits, as contracted for;

> (e) failing to comply with the terms of the written guarantees or warranties given to Plaintiff, Joseph Hayes, M.D., after Plaintiff purchased the policy as pertaining to providing of benefits upon a reasonable showing of disability;

> (f) engaging in the aforementioned fraudulent or deceptive conduct with the specific intent to induce Dr. Hayes to pay a premium for benefits the Defendants would never allow him to collect.

77.   Defendants are in violation of 73 P.S. § 201-2(4) by reason of its past and ongoing

misrepresentations, (both negligent and intentional) and fraudulent and/or deceitful

course of conduct by terminating disability benefits on the basis of inaccurate,

deceitful, biased and inappropriate claims processing by Defendants, AIG and/or

DRMS, for the sole and calculated purpose of denying benefits to its insured,

Plaintiff, Dr. Hayes.

78.   Defendant, AIG and/or DRMS, has terminated Plaintiff's valid claim for disability

benefits by way of recklessly erroneous determinations of one physician who failed

15

to medically examine Dr. Hayes or address the findings and recommendations of Dr. Hayes' own treating physicians, and in doing so ignores specific policy provision which would support payment of disability benefits to Plaintiff, Dr. Hayes, while misinterpreting others for the sole purpose of denying benefits in furtherance of its company-wide pattern and practice to deny claims.

79.   By reason of the foregoing false, deceptive, fraudulent and outrageous conduct with dishonest purpose to deny disability benefits as described, and as part of its company-wide pattern and practice, Defendant, AIG and/or DRMS, has acted and continues to act with ill will and evil intent to frivolously refuse payment of valid total and/or residual disability benefits, said conduct constitutes bad faith under Pa.C.S.A. § 8371.

80.   Defendants' actions are clearly in their self interest and with total disregard for it insured, Plaintiff, Joseph Hayes, M.D., while deliberately misrepresenting its own policy to Dr. Hayes' detriment.

81.   Such blatant, wilful and unreasonable bad faith behavior is in violation of As a result of defendant's bad faith conduct, plaintiff is entitled to an award, in addition to compensatory damages, of interest on overdue benefits at the prime rate of interest plus 3%, an award of punitive damages, and an award of costs and attorney's fees incurred in connection with this action.

**WHEREFORE**, Plaintiff, Joseph Hayes, M.D., demands judgment in his favor and against Defendants, jointly and severally, for compensatory damages in an amount in excess of $150,000.00 Dollars, attorney's fees, expenses, costs, interest and other damages allowable by law.

## VIII.  COUNT III - INTENTIONAL MISREPRESENTATION

82.    Paragraphs 1 through 81 above are incorporated herein by reference as if fully set forth at length.

83.    By entering into agreements and by accepting premium payments in renewing the aforementioned policies, Defendant, AIG, confirmed in its representations of fact, opinion, intention and/or law that it would make payments as per the policy purchased on March 3, 1995, until February 13, 2023 (Dr. Hayes' 70th birthday) or for life if Plaintiff is disabled before February 13, 2003.

84.    In fact, Defendants, had no intention of continuing to make total or residual disability payments, nor did they at any time intend to honor the individual disability policies in question and for which Plaintiff, Dr. Hayes continues to pay.

85.    Defendants, falsely made the above misrepresentations of fact, opinion, intention and/or law, including but not limited to the misrepresentation that they would pay Plaintiff, Dr. Hayes, a monthly disability benefit until his seventieth birthday should he become totally or residually disabled as an Occupational Medicine Physician per the contract language knowing it had no intention of paying said benefits.

86.    In justifiable reliance upon AIG's continuing and ongoing intentional misrepresentations, Plaintiff, Dr. Hayes has paid all premiums to maintain the policies in question.

87.    Upon information and belief, AIG's misrepresentations of fact, opinion, intention and/or law were false when made to terminate Plaintiff's claim without reasonable basis, because we now know Defendants had no intention of acting in accordance with their representations and policy provisions which AIG and/or DRMS repudiated

by procuring the opinion of its claim examiner who terminated Plaintiff's Total Disability benefits by her letter of May 18, 2006 in direct contradiction to all of the information and medical records submitted by Plaintiff in support of establishing his claim under the Policy and by failing to subject Dr. Hayes to any independent medical examinations in an effort to verify his claims and the representations of his various physicians.

88.   Upon information and belief, AIG and/or DRMS knew that it would not satisfy its disability benefit obligation to Plaintiff, Dr. Hayes, but in furtherance of its misrepresentation to Dr. Hayes, AIG led Plaintiff, Dr. Hayes, to believe that benefits would be paid per the policy provisions while accepting Dr. Hayes' premium payment all the while knowing they would not continue to pay said benefits - instead, creating unsubstantiated, unreasonable and unfounded reasons to terminate his claim.

89.   As a result of AIG and/or DRMS's wrongful, false, and fraudulent misrepresentations of fact, opinion, intention and/or law justifiably relied upon by Plaintiff, AIG and/or DRMS, intentionally caused Dr. Hayes pecuniary loss consisting of the aforementioned monthly benefits to which he was entitled while disabled, plus attorneys fees, litigation costs, expenses, interest and earnings upon the unpaid benefits.

90.   As a further result of AIG and/or DRMS's wrongful, false, and fraudulent misrepresentations of fact, opinion, intention and/or law, AIG and/or DRMS has been unjustly enriched from its exploitations of its insured, entitling Dr. Hayes to recover additional damages sufficient to give him the full benefits of the subject policies.

91.     At all times relevant and material hereto, the wrongful conduct of AIG and/or DRMS, described above was willful, deliberate and intentional, including, inter alia, DRMS's fraudulent termination of benefits based upon an opinion and conclusion of a claims examiner without reasonable basis and who relied upon faulty, flawed, insufficient and defective medical information while ignoring specific provisions in the policies to deny benefits without reasonable basis.

92.     At all times relevant and material hereto, by reason of the individual and collective conduct of Defendants and their employees, as described, including, in particularity, and as part of their company-wide pattern and practice, their deceitful undertaking of a contractual obligation without intention of good faith performance on the contracts, Defendants displayed an outrageous and reckless indifference to the rights, obligations, reputation and security of Plaintiff, and as a result should pay punitive damages to Plaintiff, Dr. Hayes.

        **WHEREFORE**, Plaintiff, Joseph Hayes, M.D., demands judgment in his favor and against Defendants, jointly and severally, for compensatory and punitive damages in an amount in excess of $150,000.00 Dollars, plus attorney's fees, expenses, costs, interest and other damages allowable by law.

## IX.  COUNT IV - BREACH OF FIDUCIARY DUTY

93.     Paragraphs 1 through 92 above are incorporated herein by reference as if fully set forth at length.

94.     Defendants owed a fiduciary duty to Dr. Hayes.

95.     Dr. Hayes placed his trust and confidence in Defendants, who were in a dominant and/or superior position to him.

96.   Defendants owed Dr. Hayes a duty of loyalty and a duty to exercise reasonable skill and care in regard to their agreements with him.

97.   Defendants breached those duties by terminating Dr. Hayes' benefits without the exercise of reasonable skill and care.

98.   Defendants breached those duties by, in furtherance of their own economic motives, and to the severe detriment of Dr. Hayes, terminating Dr. Hayes' benefits.

99.   As a result of Defendants' breach of their fiduciary duties to Dr. Hayes, he has been injured.

**WHEREFORE**, Plaintiff, Joseph Hayes, M.D., demands judgment in his favor and against Defendants, jointly and severally, for compensatory and punitive damages in an amount in excess of $150,000.00 Dollars, plus attorney's fees, expenses, costs, interest and other damages allowable by law.

**MARK F. SELTZER & ASSOCIATES, P.C.**

BY: _____
**MARK F. SELTZER, ESQUIRE**
*Attorney for Plaintiff*

**Date: 06/26/2009**

20

## JOSEPH T. HAYES, M.D. v. AMERICAN INTERNATIONAL GROUP, et al.

### EXHIBIT INDEX

EXHIBIT A          United States Life Insurance Company in the City of New York

EXHIBIT B          February 21, 2002 Correspondence from DRMS to Dr. Hayes

EXHIBIT C          Physician's Questionnaire dated February 26, 2002

EXHIBIT D          March 14, 2002 Correspondence from DRMS to Dr. Hayes

EXHIBIT E          May 18, 2006 Correspondence from DRMS to Dr. Hayes

EXHIBIT F          November 9, 2006 Correspondence from American General to Dr. Hayes

THE UNITED STATES LIFE Insurance Company in the City of New York
*(Called United States Life)*

125 Maiden Lane
New York, New York 10038

---

## CERTIFICATE OF INSURANCE

The term "Schedule Page" refers to the form which is attached. The Schedule Page is added to and made a part of your certificate.

United States Life certifies that the person named on the Schedule Page is insured for the benefits described in this certificate. This insurance is subject to the eligibility and effective date requirements of the group policy.

## DATE YOUR INSURANCE TAKES EFFECT

Your insurance will take effect on the date shown on the Schedule Page.

## CANCELLATION DURING FIRST 30 DAYS

You may cancel the insurance described in this certificate at any time during the 30 day period after you receive this certificate. Mail this certificate with your written request for cancellation to the AMA Insurance Agency, Inc., the authorized agent of the Policyholder, who will promptly refund the premium paid.

## IMPORTANT NOTICE

The benefits described in this certificate are provided by group policy G-189,553, issued to the **AMERICAN MEDICAL ASSOCIATION**, the Policyholder.

This certificate is a summary of the group policy provisions which affect your insurance. It is merely evidence of the insurance provided by such policy.

The group policy is a contract between United States Life and the Policyholder. It may be changed or ended without notice to or consent of any insured person.

This certificate replaces any certificate previously issued by United States Life to you under the group policy.

G-19001
FP



PLAINTIFF'S EXHIBIT

G-189,553

SCHEDULE PAGE

DISABILITY INCOME PLAN

*PERSONAL INFORMATION*

INSURED:                      Joseph T Hayes, MD
                              P.O. Box 4516
                              Metuchen, NJ 08840-4516


ORIGINAL EFFECTIVE DATE:      March 06, 1995


DATE OF BIRTH:                February 13, 1953

*COVERAGE INFORMATION*

CERTIFICATE NUMBER:           0060134630

---

| MONTHLY BENEFIT AMOUNT | ELIMINATION PERIOD | EFFECTIVE DATE |
|---|---|---|
| 4,000.00 | 3 Months | September 01, 1997 |

---

*SUPPLEMENTARY OPTIONAL BENEFITS*



*PREMIUM INFORMATION*

PREMIUM PAYMENT MODE:         Semi-Annual

RENEWAL PREMIUM DUE DATE(S):  September 06   March 06


DUPLICATE CERTIFICATE
Initial Premium shown is based on your current age


G-19001                              DATE PRINTED:      5/08/00

# CERTIFICATE INDEX

| SECTION | PAGE(S) |
|---|---|
| Schedule of Benefits | 2 |
| Definitions | 3 |
| Termination | |
| Date Insurance Ends | 3 |
| Long Term | |
| Disability Benefits | 4-7 |
| Pregnancy Benefits | 7 |
| Special Provisions For Groups Taken Over From a Prior Plan | 8 |
| End of Insurance Provided by The Group Policy | 8 |
| General Provisions | |
| Misstatements | 8 |
| Payment To A Minor Or Incompetent | 8 |
| Assignment | 8 |
| Compliance With Law | 9 |
| Gender | 9 |
| Incontestability | 9 |
| General Provisions For Accident And Health Insurance | |
| Filing a Claim | 9 |
| Payment of Claims | 10 |
| Physical Exams | 10 |
| Time Limit On Legal Actions | 10 |
| Conversion Privilege | 10 |

## SCHEDULE OF BENEFITS

### LONG TERM DISABILITY BENEFITS

| | |
|---|---|
| Elimination Period during Disability | See Schedule Page |
| Monthly Benefit<br>  -for Total Disability | See Schedule Page |
|   -for Residual Disability | An amount determined each month by this formula: |

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \quad \text{x} \quad \begin{array}{l}\text{Monthly Benefit for}\\ \text{Total Disability}\end{array}$$

The first six months of payments for Residual Disability will be the greater of: (a) 50% of the Monthly Benefit for Total Disability; or (b) the Monthly Benefit for Residual Disability determined for each month.

Maximum benefit period:

| | |
|---|---|
|   -if Total Disability begins prior<br>    to age 50 | Lifetime |
|   -if Total Disability begins on or<br>    after age 50 | To age 70 or on the date 24 monthly benefit payments have been paid, whichever is later |

## Change in Amount of Insurance

The Monthly Benefit for Total Disability will reduce on your certificate anniversary next following your attainment of age 65, to the greater of $1,000 or 25% of the Monthly Benefit shown on the Schedule Page. However, if the amount shown on the Schedule Page is less than $1,000, it shall remain at the amount shown.

If you are disabled on your 65th birthday your Monthly Benefit will reduce on the earlier of these dates: (a) your certificate anniversary next following your 65th birthday, if such Monthly Benefit payments have been received for 12 or more months, or (b) on the date you have received 12 Monthly Benefit payments for the then current disability.

Any other decrease in the amount of insurance will take effect on the date of receipt by the authorized agent of the Policyholder of your written request for the decrease.

## DEFINITIONS

PHYSICIAN means:
-a medical practitioner licensed to provide medical services, or
-any other practitioner whose services, by law of the state where such services are performed, must be covered by the group policy.
Each such person must be licensed in the state where he performs the service and must act within the scope of that license. He must also be certified and/or registered if required by such state.
"Physician" will not include you as an insured member or your spouse, or your or your spouse's father, mother, son, daughter, brother or sister, nor will it include an employee, business partner or business affiliate of yours.

ELIMINATION PERIOD means a period of consecutive days of Total Disability for which no benefit is payable. The duration of the Elimination Period is shown on the Schedule Page. The Elimination Period begins on the first day of Total Disability occurring after the effective date of your insurance.

MONTHLY INCOME means your income from salary, wages, bonuses, commissions, fees, or other payments which you or your corporation receive or are entitled to receive for services rendered by you before Federal Income Taxes. It includes income earned but paid into pension or deferred compensation plans. It does not include loss of time benefits, dividends, interest, or payments from pensions or annuities.

RETIRED means withdrawal from the pursuit of a full-time gainful occupation. One who has reduced the number of hours in which he is engaged in his occupation, whether such reduction occurs within a short time or a period of no more than five years, by 75% shall be presumed to be retired; provided that anyone who has reduced the number of hours in which he is engaged in such occupation due to illness or injury shall not be presumed to be retired. A member who has temporarily ceased or curtailed the activities of his occupation in order to continue his professional education by participating in an educational program of a school, organization or institution shall not be considered retired.
G-19001
DEF

## TERMINATION – Date Insurance Ends

Your insurance will end at the earliest of:

1. the date the group policy ends;
2. the end of the period for which the last premium has been paid by you;
3. the date you retire;
4. the certificate anniversary coinciding with or next following the date you attain age 70;
5. the date you enter the armed forces, unless entering under the Doctors Draft Act, in which event coverage ends on the date you have completed the term of active service under such Act if you remain on active duty;
6. upon the suspension or revocation in any state of your license to practice medicine as a result of a criminal act, ethical violation, or gross malpractice; or upon your surrender of your license to practice medicine in any state prior to, during, or in lieu of any medical insurance board inquiry, investigation or other action pertaining to a criminal act, ethical violation, or gross malpractice.

United States Life will refund premium pro-rata upon request for any period for which coverage is not afforded by reasons of this Section. Termination of the insurance of any Insured shall be without prejudice to any claim of such Insured for a period of continuous disability for which indemnity is payable hereunder and which commences prior to the date of such termination.

G-19001                                -3-                          G-189,553
E

# LONG TERM DISABILITY BENEFITS

If you become Totally Disabled while insured under the group policy and continue to be so Disabled past the Elimination Period, United States Life will pay to you the benefits described below.

The Elimination Period is shown on the Schedule Page.

## DEFINITIONS

TOTAL DISABILITY means your inability to perform the substantial and material duties of your current occupation beyond the end of the Elimination Period.

The Total Disability must be a result of an injury or sickness which begins while insured under the group policy. To be considered totally disabled, you must also be under the regular care of a physician.

CURRENT OCCUPATION means the duties of the medical specialty then being practiced or of the occupation being performed immediately prior to the disability.

RESIDUAL DISABILITY means that due to injury or sickness:
 1) You are not able to do one or more of your substantial and material daily business duties, or you are not able to do your usual daily business duties for as much time as it would normally take you to do them, after you go back to work following a period of consecutive days of Total Disability equal to the Elimination Period;
 2) Your inability to perform duties as in 1) above is due to the same condition that caused the Total Disability;
 3) You have a loss of Monthly Income of at least 20%; and
 4) You are under the regular care of a Physician. United States Life may waive this requirement if continued care is of no benefit.

For purposes of computing the Monthly Benefit for Residual Disability: PRIOR MONTHLY INCOME means your average Monthly Income for the tax year with the highest income in the three years just prior to the start of the period of Disability for which claim is made; CURRENT MONTHLY INCOME means your Monthly Income for each month of Residual Disability being claimed; LOSS OF MONTHLY INCOME means the difference between Prior Monthly Income and Current Monthly Income. Loss of Monthly Income must be caused by the Residual Disability for which claim is made. The amount of the loss must be at least 20% of Prior Monthly Income to be deemed Loss of Monthly Income.

DISABILITY means Total and/or Residual Disability, if applicable.

## MONTHLY BENEFITS

The Monthly Benefit for Total Disability will begin to accrue on the day after the Elimination Period ends. It will be paid in the amount shown on the Schedule Page.

The Monthly Benefits payable for Residual Disability are described on the next page. This Benefit will be paid according to the formula shown in the Schedule of Benefits, if applicable.

**Benefits for part of a month**
To determine the benefit to be paid for a period of less than a full month:

> -divide the benefit by 30
> -multiply the result by the number of days in such period.

## DURATION OF BENEFITS

Monthly benefits will be paid up to the maximum benefit periods shown in the Schedule of Benefits.

In no event will you be considered to have more than one disability at the same time, regardless of multiple causes.

The benefit will end on the date:
1. you fail to give required proof of continuing Total or Residual Disability;
2. your Total or Residual Disability ends;
3. the maximum benefit period ends; or
4. you die.

If the group policy ends, this will not act to end the maximum benefit period.

## MONTHLY BENEFITS PAYABLE FOR RESIDUAL DISABILITY

If you become engaged in any gainful occupation, United States Life will pay the Monthly Benefit for Residual Disability shown in the Schedule of Benefits as follows:

1. Benefits will start on the day of Residual Disability following the Elimination Period, or if later, immediately after the end of compensable Total Disability during the same period of Disability.

2. Benefits will continue while you are Residually Disabled during a period of Disability, but the combined period for which benefits for Total and Residual Disability are payable will not exceed the maximum period for which Total Disability benefits are payable.

Residual Disability benefits will not be paid for any days for which Total Disability benefits are paid.

United States Life can require any proof which is considered necessary to determine your Current Monthly Income and Prior Monthly Income. Also, United States Life or a representative retained by United States Life will have the right to examine your financial records, as we may reasonably require.

In the event you go back to work at any occupation other than the one in which you were considered Totally Disabled, and no Residual Disability Benefit is paid for a period of twenty-four (24) consecutive months, you will be conclusively presumed to have established a new occupation and the period of Disability will cease for the purposes of the group policy. All subsequent periods of Total Disability will relate to performance of duties of your new occupation.

## REHABILITATION BENEFIT

Benefits may be payable if you participate in a program of occupational rehabilitation. If, during a period of Total Disability, you notify United States Life in writing that you want to participate in a program of occupational rehabilitation, United States Life will consider paying for certain expenses you incur. Our involvement will be determined by written agreement with you. Generally, United States

**REHABILITATION BENEFIT (Continued)**
Life may pay the reasonable costs of training and education which is not covered under health care insurance, workers' compensation, or any public fund or program.

A program of occupational rehabilitation must be designed to help you return to work and be:
>    1. a formal program of rehabilitation at an accredited graduate school;
>    2. a recognized program operated by the federal or state government; or
>    3. any other professionally planned rehabilitation program of training or education.

Your participation in such program will not, of itself, be considered a recovery from Total Disability.

**PRESUMPTIVE DISABILITY BENEFIT**

You will be presumed Totally Disabled if injury or sickness results, while insured under the group policy, in the total and irrecoverable loss of:
>    1. speech;
>    2. entire hearing in both ears;
>    3. entire sight of both eyes; or
>    4. the use of both hands, or both feet, or of one hand and one foot. For this item, "total and irrecoverable loss" means the entire lack of controlled movement of the hand or foot.

Total Disability begins on the date of the loss. Benefits will be paid in accordance with the benefits for Total Disability provisions of the group policy. However, you do not have to satisfy an Elimination Period to receive benefits under this provision. The Residual Disability benefit provision will not apply if benefits are paid under this provision.

United States Life will presume you to be Totally Disabled whether or not you are able to work at any occupation or require regular care of a Physician.

The loss must occur prior to your 70th birthday. In no event will benefits be paid in addition to any other benefit paid under another provision of the group policy.

**SUCCESSIVE PERIODS OF DISABILITY**
Successive periods of disability occurring after the Elimination Period, which are due to the same or related causes and are not separated by return to performance of your occupation for twelve months or more during which no benefits are payable shall be considered as a continuation of the previous period of disability for purposes of the group policy. For purposes of the preceding sentence, "successive periods of disability" are periods in which the Monthly Benefit payable to you would be $100.00 or more.

A separate Elimination Period will apply for each separate period of Disability.

The aggregate Monthly Benefit payable under all policies issued by United States Life to the Policyholder is $13,000. An equitable adjustment of premium and benefit will be made to correct insurance greater than this aggregate amount. Such aggregate amount may be reduced due to any benefit reduction provision.

**WAIVER OF PREMIUM**
During any period of Total Disability or Residual Disability, including the Elimination Period, and while a Benefit is payable, United States Life will waive the payment of any premium becoming due while Total or Residual Disability exists. Your certificate shall remain in force until the next premium due date, subject to the DATE INSURANCE ENDS provision, except as to the payment of premiums.

## EXCLUSIONS

No monthly benefit will be paid for Disability due to:

-intentionally self-inflicted injury or attempted suicide;
-a declared or undeclared war or an act of war;
-service in the Armed Forces of any country, except during a temporary active duty assignment with the United States Armed Forces of less than eight weeks duration; or
-the use of any narcotic drug or other substance which is (a) subject to the Federal or the various state controlled substances acts, unless the prescription shall have been written by a Physician other than you, or (b) required by law to be dispensed by prescription only and used for other than a bonafide medical purpose as it relates to you or for other than the treatment of an existing medical condition.

Benefits will not be paid, or accrued, for any period of time while you are incarcerated.

G-19001
LTD-4

## PREGNANCY BENEFITS

### FOR COMPLICATIONS OF PREGNANCY

The benefits to be paid by any section of the group policy for a Complication of Pregnancy will be the same as those to be paid for a sickness.

COMPLICATIONS OF PREGNANCY means:
-conditions distinct from pregnancy, but caused or affected by it, which require hospitalization, provided the pregnancy does not terminate during such hospitalization
-non-elective caesarean section
-a terminated ectopic pregnancy, or
-spontaneous termination of pregnancy which occurs when a viable birth is not possible.

### FOR PREGNANCY PAID AS-ANY-OTHER-SICKNESS

As used in the group policy for the benefits shown below, the term "sickness" includes:
-pregnancy
-childbirth
-abortion
-complications of any abortion, and
-related medical conditions

all referred to as "pregnancy".

The benefits to be paid by the group policy for Total or Residual Disability due to pregnancy will be the same as those to be paid for Total or Residual Disability due to sickness.

G-19001
P(A)

-7-

G-189,553

**SPECIAL PROVISIONS FOR GROUPS TAKEN OVER FROM A PRIOR PLAN**

These special provisions apply only to those persons who were insured by a prior plan (but not to those who are disabled as determined under the prior plan as of August 31, 1997).

PRIOR PLAN means the Policyholder's group insurance plan in effect on August 31, 1997 (Group Policy 90-10613-47, issued by Sentry Life Insurance Company).

If the maximum benefit amount or maximum benefit period for disability has been exhausted under the Prior Plan, no benefits will be payable under the group policy for the condition which caused the disability, except as stated in the Successive Periods of Disability provision of the Long Term Disability Benefits section.

G-19001
TOG

---

**END OF INSURANCE PROVIDED BY THE GROUP POLICY**

IF PREMIUM IS NOT PAID  -  GRACE PERIOD

Each premium, after the first, may be paid up to 31 days after its due date. This period is the grace period. The insurance provided by the group policy will stay in effect during this period. If the premium is not paid by the end of this period, such insurance will end at that time.

United States Life may extend the grace period by written notice. Such notice will state the date insurance will end if the premium remains unpaid.

Premiums must be paid for a grace period and any extension of such period.

G-19001
END

---

**GENERAL PROVISIONS**

MISSTATEMENTS

A person's age, sex or any other data may be misstated. If so, the correct data will be used to determine if insurance is in force. If insurance is in force, the premium and/or benefits will be adjusted according to the facts.

PAYMENT TO A MINOR OR INCOMPETENT

If any beneficiary or payee is a minor or is incompetent to receive payment, United States Life will pay his guardian. United States Life will not be liable for such payment after it is made.

ASSIGNMENT

United States Life will not be bound by any assignment unless it is in writing and is recorded at its home office. United States Life is not responsible for the validity of an assignment.

G-19001
GP

G-189,553

**GENERAL PROVISIONS (Continued)**
COMPLIANCE WITH LAW

On the date the group policy takes effect, some of its provisions may conflict with an applicable law. If so, any such provision is changed to comply with the minimums required by such law.

GENDER

Male pronouns will be read as female where it applies.

INCONTESTABILITY

United States Life will not use a person's statements relating to his insurability to contest insurance after it has been in force for 2 years during his life. United States Life will also not use such statement to contest an increase or benefit addition to such insurance after the increase or benefit has been in force for 2 years during his life. Those statements must be in a written application signed by the person.

G-19001
GP

---

**GENERAL PROVISIONS FOR ACCIDENT AND HEALTH INSURANCE**

FILING A CLAIM

To file a claim, follow these steps:

Step 1:
A claimant should send a written notice of claim to United States Life or its agent within 20 days of a loss or as soon thereafter as reasonably possible. No special form is required to do this. The notice need only identify the claimant and the Policyholder.

Step 2:
When United States Life receives the notice, it will send a proof of claim form to the claimant.

Step 3:
The claimant should receive the proof of claim form within 15 days of the date United States Life received the notice of claim.

If the form is received within such time, it should be completed, as instructed, by all persons required to do so. Additional proof, if required, should be attached to the form.

If the form is not received within such time, the claimant may provide written proof of claim to United States Life on any reasonable form. Such proof must state the date the injury or sickness began and the nature and extent of the loss.

Step 4:
Proof of claim must be sent to United States Life within 90 days after the end of disability. United States Life may require more proof as often as needed to verify disability.

If a notice or proof is sent later than the times shown above, United States Life will not deny or reduce a claim if the notice or proof was sent as soon as possible.

G-19001                                    -9-                                    G-189,553
GPAH

**GENERAL PROVISIONS FOR ACCIDENT AND HEALTH INSURANCE (Continued)**

PAYMENT OF CLAIMS

All benefits will be paid as they accrue.

PHYSICAL EXAMS

United States Life, at its expense, has the right to examine the insured.  This may be done as often as needed to process a claim.

TIME LIMIT ON LEGAL ACTIONS

Legal action may only be brought against United States Life during a certain period.  This period begins 60 days after the date proof of claim was filed and ends 3 years after the end of the period within which such proof is required.

**CONVERSION PRIVILEGE**

If the policy is terminated at the request of the Policyholder, and the Policyholder does not provide a replacement plan with another insurance company, you shall be entitled to have, without evidence of insurability, guaranteed renewable coverage without supplementary benefits, provided written application for the coverage shall be made, and the first premium paid thereon paid to United States Life within 31 days after such termination and provided further that:

    (a)    the converted coverage shall be in the amount equal to or, at your option, an amount less than the amount of your disability insurance under the policy which ceases because of such termination;

    (b)    the premiums payable under the converted coverage shall be at United States Life's then customary rate applicable to the class of risk to which you then belong and to your attained age on the effective date of the converted coverage; and

    (c)    any converted coverage issued under the terms of this section shall take effect at the end of the 31-day period during which application for the converted coverage may be made.

NOTICE CONCERNING COVERAGE
LIMITATIONS AND EXCLUSIONS UNDER THE NEW JERSEY LIFE AND
HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of New Jersey who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the New Jersey Life and Health Insurance Guaranty Association.

The purpose of this association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force.

The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

DISCLAIMER

The New Jersey Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in New Jersey. You should not rely on coverage by the New Jersey Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.

The New Jersey Life and Health Insurance Guaranty Association
One Gateway Center 7th Floor
Newark, New Jersey 07102

State of New Jersey Department of Insurance
20 West State Street
CN-325
Trenton, New Jersey 08625

The state law that provides for this safety-net coverage is called the New Jersey Life and Health Insurance Guaranty Association Act, N.J.S.A. 17B:32A-1, et seq. (the "Act").

(please turn to back of page)

G-22083
NOTICE

NJ

## COVERAGE

The following is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

Generally, individuals will be protected by the Life and Health Insurance Guaranty Association if they live in New Jersey and hold a life, health or long-term care insurance contract, annuity contract, or if they are insured under a group insurance contract, issued by a member insurer.

The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this Association if:

- they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);

- the insurer was not authorized to do business in this state;

- the policy is issued by an organization which is not a member of the New Jersey Life and Health Insurance Guaranty Association.

The Association also does not provide coverage for:

- any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;

- any policy of reinsurance (unless an assumption certificate was issued);

- interest rate yields that exceed an average rate as more fully described in Section 3 of the Act;

- dividends;

- credits given in connection with the administration of a policy by a group contractholder;

- employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them).

## LIMITS ON AMOUNT OF COVERAGE

The Act also limits the amount the Association is obligated to pay out. The Association cannot pay more than what the insurance company would owe under a policy or contract.

With respect to any one insured individual, regardless of the number of policies or contracts, the Association will pay not more than $500,000 in life insurance death benefits and present value annuity benefits, including net cash surrender and net cash withdrawal values. Within this overall limit, the Association will not pay more than $100,000 in cash surrender values for life insurance, $100,000 in cash surrender values for annuity benefits, $500,000 in life insurance death benefits or $500,000 in present value of annuities -- again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages.

The Association will not pay more than $2,000,000 in benefits to any one contractholder under any one unallocated annuity contract.

There are no limits on the benefits the Association will pay with respect to any one group, blanket or individual accident and health insurance policy.



G-22083
NOTICE

NJ



**RMS**

**Disability Reinsurance Management Services, Inc.**

178 Middle Street, Suite 200                                    (207) 775-2054
Portland, Maine 04101-4075                                    Fax (207) 775-2478

February 21, 2002


Joseph T Hayes, MD
153 Taylor Blvd.
Brick, NJ 08724


RE:     AMA-Sponsored Policy No: G-189553
        Certificate No: 60134630


Dear Dr. Hayes,

We are the claims management agents for United States Life Insurance Company the Long Term
Disability carrier for AMA G-189553.  This letter acknowledges receipt of your Long-Term Disability claim.


Policy G-189553 reads:

*Total Disability means your inability to perform the substantial and material duties of your current
occupation beyond the end of the Elimination Period.  Total Disability must be the result of an Injury or
Sickness which begins while insured under the group policy.  To be considered totally disabled, you must
also be under the regular care of a physician.*

*Elimination Period means a period of consecutive days of Total Disability for which no benefit is payable.
The Elimination Period begins on the first day of Total Disability occurring after the effective date of your
insurance.  Current occupation means the duties of the medical specialty then being practiced or the
occupation being performed immediately prior to the disability.*

*Residual Disability means that due to injury or sickness:*
1.  *You are not able to do one or more of your substantial and material daily business duties, or
    you are not able to do your usual daily business duties for as much time as it would normally
    take you to do them, after you go back to work following a period of consecutive days of Total
    Disability equal to the Elimination Period;*
2.  *Your inability to perform duties as in 1) above is due to the same condition that caused the
    Total Disability;*
3.  *You have a loss of Monthly Income of at least 20%; and*
4.  *You are under the regular care of a Physician, United States Life may waive this requirement
    if continued care is of no benefit.*

You are claiming a total disability date of February November 21, 2001 due to a head and spine injury
and resultant numbness and pain to your left arm and hand, that prevents you from performing the
substantial and material duties of your current occupation as a Occupational Medicine Physician.

**Building Trust through Innovation**



Joseph T Hayes. MD
February 21, 2002
Page 2

Your Policy has a 90-day elimination period.  If liability is accepted, you would be eligible for a monthly disability benefit of $6,000 beginning on February 19, 2002 with your first benefit due on or about March 19, 2002.

Before we make a liability decision, we need to obtain additional medical, occupational, and financial information.  I have requested medical records from your attending physician's and treatment facility and will have this information reviewed by our medical department upon receipt.  In addition, I have requested occupational information from your employer.

To help us determine your occupational duties I have enclosed a Physician Questionnaire for completion and return to this office in the envelope provided.  Please be as specific as possible when answering these questions and also provide a list of the hospitals where you have privileges.

Your Policy provides Residual Disability benefits designed to provide benefits when you are medically able to perform a portion of your duties, but due to your condition you are not able to perform all of the substantial and material duties of your occupation.  To ensure we have an accurate accounting of your pre disability earnings, please forward copies of your 1998, 1999 and 2000 Personal and Corporate Federal Income Tax Returns with all schedules and attachments, including W-2's.

I wish you well during this impairing period.  I will keep you up to date on the progress of your claim.  If you have any questions or concerns, please do not hesitant to contact me.

Sincerely,

John W. Betzold, Jr.
Senior Managed Disability Analyst
1-877-254-0085, ext. 3082

Encl.

JWD
AMA

# Physician Questionnaire

James T. Hayes, MD

To help us evaluate your claim, please give us the information requested below:

1. Please list all sources of earned income for the year prior to disability (Name and Address)

   Montgomery Hospital Medical Center, 1301 Powell Street Norristown PA. 19404.

   Private Practice Occupational Medicine, 1330 Powell Street 2nd Flr Professional Bldg. Norristown PA. 19408

2. In what field of medicine to you specialize?

   Occupational Medicine

3. In what states are you licensed to practice?

   Pennsylvania + Kentucky

4. Are you Board Certified?   Yes ✓   No____
   If yes, the date you were certified January 1989 - American Board of Preventive Medicine; Board Certified Occupational Medicine

5. Were you practicing full time in your specialty immediately prior to this period of disability? Yes X  No____

6. If the answer to #5 above is "No", please indicate in what area of medicine you were actually practicing. (i.e., General Practice, Administration, etc.)

   N/A

7. Please check the type of practice you were engaged in:
   X Private Practice    X Hospital or Clinic Staff    ____ Government Agency of Municipality
   ½ to 1 day/week    3 to 3½ days per week.

8. Please describe in order of priority the important duties of the specific occupation(s) you were engaged in on a full-time basis at the time disability commenced.

   (1) 95% Clinical - Evaluation And Treatment of Patients.
   (2) Reading Chart + Examining Patients
   (3) Suturing, Splinting, ½ casting, Bandaging
   (4) 5% Administrative; Completing Charts Phone Calls.

PLAINTIFF'S EXHIBIT

# Physician Questionnaire

9. What important duties are you now able to perform and as of what date were you able to perform them? *Are you Able to do Any of Duties Befor disability*

*My duties required me to Stand, Bend, Squat, + reach repetitively For Eight ho per DAY. I Am substantially limited From performing these Duties. Also, I Am required to use Both hands For Delicate + exant work Such As pAlpation, percussion + fine MANIpulation For Suturing, BANdaging Splinting, CASTing. I Am Also A Licensed Acupuncturist - severly limited cANt Bend or use Left +*

10. If you are working part-time, please list the hours: *Acupuncture oNly*

*wednesdays* From **8:00** ~~am~~/pm to **1:00 pm** am/~~pm~~
*I Schedule 1 pAtient Per hour - No Bending, No prolonged StANding, Limine Treat ment*

11. Please indicate which of the following are routine physical requirements of the *Because I* job. Please list any other physical requirements not mentioned, with the *can only* appropriate percent of time spent. *Helping pAtients on + off tAble 50% use 1 ho*

X *Percentage do not add to 100% Because Sometime 2 or more* 

Bending- **10** % of day      Walking- **5** % of day
Standing- **60** % of day      Sitting- **5** % of day
*Reaching over pAtients* **10%** *SquAting* **10%** *use of upper Extremities* **30**

12. Average hours worked per week for the one year period prior to disability:
*2 functions are happening At The SAme Time.*

(a) At your specific specialty **8** hours: From **7:30** ~~am~~/pm to **4:00** am/~~pm~~
(b) At your office _____ hours: From _____ am/pm to _____ am/pm
(c) At a hospital _____ hours: From _____ am/pm to _____ am/pm

13. Does your occupation require travel? Yes **X** No _____ *Round trip 160 miles per DAY x 4 day per week.*
If so, how many miles per week? **640** .
What mode of transportation? Private Auto **X** Air _____ Other _____

14. Please give us the name, address and policy number of your workman's compensation carrier:

*Comp Services INc.*
*1880 J F K Blvd 8th floor*
*Philadelphia PA 19103*
*Claims adjust Kely Holdofsky - 215 - 587 - 1287*

**2/26/0?**
Date

*[signature]*
Signature

Page 2 of 2



**Disability Reinsurance Management Services, Inc.**

178 Middle Street, Suite 200                                     (207) 775-2054
Portland, Maine 04101-4075                                     Fax (207) 775-2478

March 14, 2002


Joseph T Hayes, MD
153 Taylor Blvd.
Brick, NJ  08724


RE:      AMA-Sponsored Policy No: G-189553
         Certificate No: 60134630

Dear Dr. Hayes,

Disability RMS is the claims administrator for United States Life Insurance Company, the Long-Term Disability insurance carrier for AMA-G-189553. We are pleased to advise you that your claim has been approved based on your total inability to perform the substantial and material duties of your current occupation.

Your disability coverage has a 90-day elimination period that must be satisfied before benefits become payable. Using a date of disability of November 21, 2001, benefits become payable on February 19, 2002. Your Policy provides monthly benefits of $4,000. You will be receiving your initial benefit check for the period February 19 to March 19, 2002 under separate cover from United States Life Insurance Company in the very near future.

Benefits will continue while you remain contractually disabled but not beyond the maximum benefit period provided by the policy or its limitation provisions. We expect your disability claim to be of short duration as you continue to recover from your disabling condition. When you are medically able to return to work in your current occupation, but due to your medical condition, are unable to sustain full-time occupational duties, you may be eligible for Residual disability benefits.

We will require periodic updates regarding the status of your condition from you and your attending physician. Please keep us informed of your recovery and return to work plans. I have notified the American Medical Association that your claim has been approved and your Policy should be placed on waiver of premium. The AMA will determine if any premium refund is due you. If you have any questions or concerns, please do not hesitate to contact me.

Sincerely,



John W. Betzold, Jr.
Senior Managed Disability Analyst
1-877-254-0085, ext. 3082


cc:      P Montgomery



# Disability RMS


*Committed to a higher standard*

**Disability Reinsurance Management Services, Inc.**
One Riverfront Plaza
Westbrook, ME 04092-9700
(877) 489-9784
Fax (866) 376-9480

May 18, 2006

Dr. Joseph T Hayes
153 Taylor Boulevard
Brick, NJ  08724

POLICY:        American Medical Association Disability Income Policy G-189553

Dear Dr. Hayes,

Disability RMS is the claims administrator for The United States Life Insurance Company in the City of New York, the disability insurance carrier for the American Medical Association.   I am writing to advise you of the status of your claim.

We recently conducted a full review of your claim based on recent information we have received.  We have determined that you no longer meet the definition of disability and are no longer eligible to receive disability benefits.  Your policy reads:

*"Total Disability means your **inability to perform the substantial and material duties of your current occupation** beyond the end of the Elimination Period.  Total Disability must be the result of an Injury or Sickness which begins while insured under the group policy.  To be considered totally disabled, you must also be under the regular care of a physician."*

*"Current occupation means the duties of the medical specialty then being practiced or the occupation being performed immediately prior to the disability."*

*"Residual Disability means that due to injury or sickness:*
1. *You are not able to do one or more of your substantial and material daily business duties, or you are not able to do your usual daily business duties for as much time as it would normally take you to do them, after you go back to work following a period of consecutive days of Total Disability equal to the Elimination Period;*
2. *Your inability to perform duties as in 1) above is due to the same condition that caused the Total Disability;*
3. *You have a loss of Monthly Income of at least 20%; and*
4. *You are under the regular care of a Physician, United States Life may waive this requirement if continued care is of no benefit."*

*For purposes of computing the Monthly Benefit for Residual Disability:  PRIOR MONTHLY INCOME means your average Monthly Income for the tax year with the highest income in the three years just prior to the start of the period of Disability for which claim is made; CURRENT MONTHLY INCOME means your Monthly Income for each month of Residual Disability being claimed; LOSS OF MONTHLY INCOME means the difference between Prior Monthly Income and Current Monthly Income.  Loss of Monthly Income must be caused by the Residual Disability for which claim is made.  The amount of the loss must be at least 20% of Prior Monthly Income to be considered as Loss of Monthly Income."*



PLAINTIFF'S
EXHIBIT

Dr. Joseph Hayes
May 18, 2006
Page 2

"WAIVER OF PREMIUM

*During any period of Total Disability or Residual Disability, including the Elimination Period, and while a Benefit is payable, United States Life will waive the payment of any premium becoming due while Total or Residual Disability exists. Waiver will be made according to the mode of premium payment that is in effect when Total or Residual Disability starts."*

You filed your disability claim as a result of severe low back and neck pain and numbness. Dr. Steven Valentino has been your treating physician and has certified your disability. You indicated on your recent claimant statement, completed on October 30, 2005, that your daily activities were "sedentary, self care, personal hygiene, driving with difficulty due to medications, shopping, household chores, making calls from home and developing status to perform work from home. So far not too successful."

Dr. Valentino also completed the Attending Physicians Statement on November 11, 2005. On this form, he indicated that you have a Class 5 impairment, your condition has not changed and he did not expect any significant improvement, chronic condition. He described your restrictions and limitations as "no prolonged sitting, standing, walking, prolonged cervical flexion and extension. No lifting > 10 lbs."

We have had several recent telephone conversations with you, specifically January 16, 2006, January 18, 2006, and March 15, 2006. As you may recall, in my return calls to you at two different telephone numbers, I was told by a female answering the phone (you indicated it was your wife) that you were at work and seeing patients, raising concerns on my part about your work activities. When I questioned your activity, you indicated that you were not working. In your letter dated February 25, 2006, you stated you were required by the state to maintain records for up to 30 years and that you were active in trying to get the records under the auspices of another physician or professional entity that deals with medical records. You also indicated that you were looking for alternative careers, namely considering a possibility of a career in acupuncture.

Due to the concerns raised in our conversations and your letter, we attempted to verify your activities, clarify your license status as well as your earnings. We found that you have a website, MyHolistic.Com called The Hayes Pain Management Center. You are advertising "Compassion, Care, and Competency" safe, painless, and highly effective methods of eliminating pain. You state you are licensed for both the practice of medicine and acupuncture in the Commonwealth of Pennsylvania. This was verified through the Pennsylvania Department of State Bureau of Professional and Occupational Affairs. The location given is Montgomery Hospital Medical Center Professional Building, 1330 Powell Street, Suite 200, Norristown, PA 19401. You also have another location at North East Philadelphia, 1452 Brownsville Road, Trevose, PA 19503.

We chose to verify your activities on February 14, 15 & 16, 2006. You were observed on February 14, 2006 traveling from Brick, NJ at 8:02 am to Village Shires Center Chiropractic Community Health Center, PC located in Northampton, PA arriving at 9:46 am. You were observed unloading both large and small items from your vehicle and going into the chiropractic office. No restrictions or hesitation of movement/motion while you performed these tasks were observed. At 2:43 pm, you were observed leaving the health center.

On February 15, 2006, you left your residence at 7:14 am heading in the direction of Pennsylvania. You were observed stopping for gas, pumping it yourself and bending over to tie your shoes. You continued driving to Montgomery Hospital Medical Center in Norristown, PA. You were observed utilizing an access card to enter the parking garage. You remained at this location until you were seen leaving at 4:29 pm, pulling a case and wearing hospital scrubs.

Dr. Joseph Hayes
May 18, 2006
Page 3

On February 16, 2006, we again observed you leaving your residence at 7:45 am and arriving at
Montgomery Hospital located in Norristown, PA at 9:30 am. Your vehicle remained in the parking garage
throughout the day. At 6:38 pm you were seen walking out of Montgomery Hospital.

After the observance of these activities, we sent you a letter dated February 16, 2006 and requested tax
returns for the years of 2002, 2003, 2004 and 2005 to review income/earnings given our observations.
You responded in a letter dated February 25, 2006 stating that you are limited to a maximum fee of $23.00
to provide former patients with their medical records.   You further indicated that there is no revenue being
produced.

Using your authorization, we obtained a print out of your FICA and Medicare wages by year for 1968-2004.
This printout from Social Security Administration's database showed your post-disability earnings as:

| | |
|---|---|
| 2002 | $51,680 |
| 2003 | $86,172 |
| 2004 | $95,500 |

I would like to point out that these earnings are the amounts reported for FICA and Medicare Taxes. They
do not include any SEP/pension contributions made on your behalf by your Corporation nor do these
amounts include any net profit from the practice.

You did not provide us with your tax returns for these years as was requested. You stated in our
telephone conversation of March 15, 2006 that you did not file tax returns for 2003 and 2004 as you had
no income. You further indicated your interest on investments were in the negative. For 2005, you
reportedly had a better year in the stock market and had interest income to report. I again asked for a
copy once it was available.

Your file was referred to an Independent Physician Consultant who is board certified in Neurology and
Psychology for review. He reviewed the medical documentation provided by Dr. Valentino as well as the
activities report.   Your activities are inconsistent with the restrictions and limitations provided by Dr.
Valentino as well as the severity reported by you. The observed activity would indicate you are capable of
driving in excess of 140 miles round trip on a daily basis. Your destinations are medical buildings where
you were observed carrying equipment into the facilities, spending a work day there and wearing attire that
would indicate you are engaged in clinical activity.

Our Independent Physician Consultant has attempted to contact Dr. Valentino on several occasions to
clarify your level of impairment. Dr. Valentino has not responded. We have, therefore, completed our
evaluation based on the information available to us.

It is our conclusion that your stated limitations are inconsistent with your actual observed and recorded
activities and therefore disability. The claim file documentation does not support a functional impairment
so severe that you are precluded from performing your occupation and in fact, you have demonstrated the
ability to be highly functional. In addition, the FICA and Medicare earnings obtained from SSA indicate that
you have been working since 2002. Your documented activities demonstrate your ability to perform your
occupation. We are therefore, unable to extend additional benefits as you do not meet the definition of
disability. Moreover, we reserve our right to request any and all overpayments as a result of your
occupational activities and earned income in 2002, 2003, 2004, 2005 and year to date 2006. Amounts
previously paid may have been inappropriate. Our Financial Consultant determined that your pre-disability
monthly income was $5,476 using your policy provision language. Using the reported FICA and Medicare
reported earnings, you suffered a 21% loss in 2002, and a zero percent loss of earnings in 2003 & 2004.

Dr. Joseph Hayes
May 18, 2006
Page 4

We must assume that you also do not have a loss of income in 2005 and 2006. Please understand that total disability benefits continued to be paid throughout the duration of your claim based on your claim that you were unable to perform your occupation and your Attending Physician's certification of same.

You have received total disability benefits for the period of February 19, 2002 to April 19, 2006 (50 months) in the amount of $4,000 per month. Based on the FICA and Medicare earnings as well as your activities, you have demonstrated the ability to perform your occupational duties in some capacity and you would not have been eligible to receive total disability benefits. It would appear that your claim has a significant overpayment of approximately $183,800 based on our Financial Consultant's calculations. We do reserve the right to request this overpayment.

As required, we have forwarded your claim file to the United States Life Insurance Company for further disposition.

If you have questions regarding this determination, please contact me at 1-(877) 489-9784. If you disagree with our decision, you may request a re-evaluation of that decision. We suggest that you submit your request for re-evaluation within 90 days from the date of this letter.

By accepting this offer to provide an additional review of your claim, you agree that we will reconsider all of the information previously submitted and re-evaluate the claim in its totality, including all applicable policy provisions and previous conclusions reached. In addition we will consider any new information you may submit for review in this re-evaluation process. An analyst who was not previously involved in your claim will be conducting this additional review.

Please send your request for a re-evaluation of your claim to:

Disability Reinsurance Management Services
One Riverfront Plaza
Westbrook, ME 04092-9700

Our determination was based on the facts above and the provisions of the policy.

The Company reserves the right to apply any and all defenses which they have, or may have, with respect to any claim and/or provisions relating to this policy.

Sincerely,

Sally A. Hauber
Senior Managed Disability Analyst
(877) 489-9784, ext. 3032

 **AMERICAN GENERAL**

November 9, 2006

Joseph T. Hayes M.D.
153 Taylor Blvd.
Brick, NJ 08724

RE: Certificate Number: 60134630
Policy Number:  G189553

Dear Dr. Hayes,

Please be advised that the review of your claim file is complete. The claim termination as it was rendered earlier still stands. If you wish to formally appeal this decision please do so in writing. The time constraints for an appeal are enclosed in this letter. This claim file has been referred to the New Jersey Department of Insurance, OIFP Division.  We are obligated to report all suspicious activity to the NJ Department of Insurance, OIFP Division.  We must cooperate with their requests for information and/or assistance in investigating this claim any further.

Please feel free to contact my office if there are any questions or concerns. I can be reached at (732) 922-7370 between the hours of 8:15 a.m. and 4:45 p.m. est., Monday through Friday.

The Company reserves any and all rights and defenses whether or not expressly stated in this letter.

Sincerely,

AnneMarie Jones
Sr. Special Investigator
Special Investigation Unit
AIG American General
(732) 922-7370
(732) 922-7239 fax
Annemarie_jones@aigag.com

Cc: DRMS, AMA & file

**American General Life Companies**
Group Benefits and Financial Institutions

Distributing products issued by: AIG Life Insurance Company*, American International Life Assurance Company of New York, American General Assurance Company*, American General Indemnity Company*, American General Life Insurance Company*, Delaware American Life Insurance Company*, The United States Life Insurance Company in the City of New York
*Member companies of American International Group, Inc.*

3600 Route 66 • Neptune, NJ 07753 • 732.922.7000 • www.agac.com
*This company does not solicit business in New York.*



## VERIFICATION

Dr. Joseph T. Hayes hereby states that he is the Plaintiff in this action and verifies that the statements made in the forgoing Complaint are true and correct to the best of his knowledge, information and belief.   The undersigned understands that the statements therein are made subject to penalties of law relating to unsworn falsification to authorities.

_____
Dr. Joseph T. Hayes

Date:   6 | 26 | 09